IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:18-CR-28 |
| | ) | |
| JAMES WOLFF, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Defendant's Motion to Withdraw Plea of
Guilty [doc. 60]. The Court conducted a hearing on this matter on July 1, 2019 [doc. 65].
For the reasons stated herein, Defendant's motion [doc. 60] is **DENIED**.

## Background

On March 20, 2018, Defendant was indicted on two offenses [doc. 1]. Count One
charged Defendant with threatening to assault and murder a person assisting an officer or
employee of the U.S. Social Security Administration ("SSA") with intent to impede,
intimidate, and interfere with the person while engaged in and on account of the
performance of his or her official duties and with the intent to retaliate against the person
on account of the performance of the person's official duties, in violation of 18 U.S.C.
§ 115. Count Two charged Defendant with attempt to intimidate and impede an officer,
employee, and contractor of the SSA including any state employee of a disability
determination service acting in an official capacity to carry out their duties, in violation

of 42 U.S.C. §1320(a)-8(b).  On January 16, 2019, the Defendant pled guilty to Count Two, which is a misdemeanor.

This case stems from the denial of Defendant's application for disability benefits. After a telephone interview[1] on February 28, 2018 with disability compensation investigator Simchah Edwards, Defendant left a series of threatening and harassing voice mail messages in which he threatened to kill her and others.  He also stated that he understood why people would get a gun and "shoot up a place" or "go postal."  He admitted making these statements when he was interviewed by law enforcement on March 8, 2018.

Defendant initially retained Robert Kurtz to represent him in this matter.  Mr. Kurtz filed a motion to dismiss Count 1 of the indictment, which was the felony count, in June of 2018 [doc. 18].  Mr. Kurtz also filed a motion for a psychiatric examination to determine Defendant's competency [doc. 20].  The Court granted the motion for a psychiatric examination, and ordered Defendant to undergo a mental examination [doc. 30].  In a psychiatric report after this examination, Dr. Andrew Demick concluded that Defendant was "very likely experiencing significant mental health difficulties" but was nevertheless able to assist in his defense and competent to stand trial [doc. 32].  The Court found Defendant competent to proceed to trial [doc. 35].

---

[1] The fact that an interview occurred prior to the threatening messages is included in the PSR, as well as the factual basis for the plea which Defendant agreed to both when signing the plea agreement and at his change of plea hearing.  At a hearing on this motion to withdraw, Defendant contested the fact that there was an interview prior to the phone calls he made. However, whether an interview occurred or not is entirely irrelevant to the disposition of this motion.

While the motion to dismiss Count 1 was pending, Defendant, on December 28, 2018, entered into a written plea agreement with the government [doc. 44]. In the agreement, Defendant agreed to plead guilty to Count 2, the misdemeanor charge, and the government agreed to move to dismiss Count 1, the felony charge [*id*. at 1]. Within the plea agreement, Defendant stipulated to a factual recitation of the events supporting his plea [*id*. at 2-3]. The plea agreement stated that Defendant was pleading guilty because he was in fact guilty, and he understood that he was giving up several rights, including the right to plead not guilty [*id*. at 3-4]. Both Defendant and Mr. Kurtz signed the plea agreement [*id*. at 8].

At the change of plea hearing, on January 16, 2019, Defendant was placed under oath [doc. 62 at 3]. The Court then asked Defendant several questions about his interactions with Mr. Kurtz, and Defendant stated that he had been given sufficient time to review the indictment with Mr. Kurtz, had told Mr. Kurtz everything about his case, believed that Mr. Kurtz was fully aware of all the facts on which the charge was based, had been advised by Mr. Kurtz of the nature and meaning of the charge and any words in the indictment that Defendant did not understand, had been advised by Mr. Kurtz as to every element of the charged offense and any available defense [*id*. at 4-6]. The Court then asked Defendant if he was "satisfied with Mr. Kurtz's advice and the representation of you by Mr. Kurtz," and Defendant responded "yes" [*id*. at 6].

Defendant confirmed that he understood that, by pleading guilty, he was waiving his right to a trial of any kind, and the rights associated with a trial [*id*. at 7]. The Court

then asked Defendant if "any person, including an officer or agent of the government put any pressure on [him] mentally or physically to force [him] to plead guilty," and Defendant responded "no" [*id*. at 8]. The government then read the factual basis contained in the plea agreement in open court [*id*. at 10-14]. The following exchange then occurred between the Court and the Defendant:

Q: Mr. Wolff, did you hear the Assistant United States Attorney as she related what the government says that you did in your case?

A: Yes, I did.

Q: Do you agree that that's what you did?

A: There's some slight inaccuracies there, yes.

Q: Okay. But do you agree that basically, you have committed the acts set forth by the government in its statement of what you did in your case?

A: I made some threatening calls to someone that had caused me significant emotional distress and I feel have acted criminally against me.

Q: Okay. Very well then. In regard to Count Two of the Indictment charging you with intimidating and attempted to intimidate and impede an officer, employee, or contractor of the Social Security Administration, including a State employee of a disability determination service, in violation of 42 United States Code Section 1322a-8b, how do you plead? Guilty or not guilty?

A: Guilty

Q: Do you understand what you're pleading guilty to, Mr. Wolff?

A: Yes, I do.

Q: Are you pleading guilty because you are, in fact, guilty?

4

A: I'm pleading guilty due to the fact that I believe only a jury can really determine guilt.  But I am pleading guilty to these charges with extenuating circumstances.

[*id*. at 14-15].

The Court also asked Defendant whether he understood that he would not be permitted to withdraw his plea on the basis of the sentence he might receive, and could not wait to see what his sentence would be before deciding to plead guilty, Defendant stated that he understood [*id*. at 19-20].   The Court concluded that Defendant was knowingly and voluntarily pleading guilty, and accepted the guilty plea [*id*. at 21].   The Court allowed Defendant to remain out on bond pending the sentencing hearing [*id*. at 25].

On March 29, 2019, the probation office issued its presentence investigation report ("PSR"), which calculated a guideline sentencing range of 0 to 6 months' imprisonment [doc. 50 ¶ 73].   The PSR also recounted Defendant's history of physical and mental illness [*id*. ¶¶ 51-63].   On April 15, 2019, Mr. Kurtz moved to withdraw as counsel for Defendant [doc. 54].   On April 26, 2019, the Court granted Mr. Kurtz's motion to withdraw, and Mark Brown was appointed to represent Defendant [doc. 59].

On June 3, 2019, Defendant filed the instant motion to withdraw guilty plea.  In his motion, filed approximately 6 months after entry of the guilty plea in this case, Defendant claims that he had numerous conflicts with his prior counsel, Mr. Kurtz. Particularly, Defendant claims that Mr. Kurtz placed "too strong of an emphasis" on Defendant's mental health "and not enough focus on his physical health" [doc. 61 at 5].

He also claims that, at the time of his guilty plea, he did not feel "physically able to fight this case" but now feels he is able to do so [*id*.].  Defendant further claims that he was under duress at home as his wife had threatened to divorce him if he did not accept the plea, and he did not have adequate time to consider the merits of his plea due to the holiday season [*id*.].  Defendant claims that he has maintained his innocence in this case and that he has limited experience with the criminal justice system [*id*. at 6].

The government responds that the 138-day period between the entry of Defendant's guilty plea and his motion to withdraw is too lengthy to support withdrawal of his plea [doc. 63 at 5].  The government disputes the "vague reasons" presented in support of Defendant's motion to withdraw, noting that, during the plea colloquy, Defendant stated that he was not under any duress [*id*. at 6-7].  The government further contends that Defendant "did not meaningfully object" to the factual description of his actions at the plea hearing [*id.* at 8-9].  The government argues that the Defendant further understood the consequences of his guilty plea, but acknowledges that he has had limited experience with the criminal justice system [*id*. at 9-10].

<u>Analysis</u>

Pursuant to Fed. R. Crim. P. 11(d)(2)(B), a defendant may withdraw a plea of guilty if he "can show a fair and just reason for requesting a withdrawal."  The rule is intended to allow the withdrawal of "a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad

choice in pleading guilty." *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded by statute on other grounds as recognized by United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000); *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991).

In determining whether a defendant has shown a "fair and just reason" for the withdrawal of his guilty plea, the Court must consider the following non-exclusive factors:

1. the amount of time that elapsed between the plea and the motion to withdraw it;
2. the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
3. whether the defendant has asserted or maintained his innocence;
4. the circumstances underlying the entry of the guilty plea;
5. the defendant's nature and background;
6. the degree to which the defendant has had prior experience with the criminal justice system; and
7. potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d at 1181. The government does not have to establish prejudice that would result from a plea withdrawal, unless and until the defendant establishes a fair and just reason for allowing the withdrawal. *United States v. Goddard*, 638 F.3d 490, 495 (6th Cir. 2011). The defendant carries the burden of proving that withdrawal of his guilty plea is justified, and the matter is left to the discretion of the district court. *United States v. Osborne*, 565 F. Supp. 2d 927, 932 (E.D. Tenn. 2008) (citing *Alexander*, 948 F.2d at 1003 (citation omitted)).

The Court is not convinced that Defendant has shown a "fair and just reason" supporting his request to withdraw his guilty plea. As to the amount of time that elapsed

between the plea and the motion to withdraw it, Defendant waited approximately six months after the entry of his guilty plea to move for withdrawal of his plea. Notably, by the time Defendant moved to withdraw his plea, the probation officer had already completed and submitted a PSR in preparation for sentencing. The Sixth Circuit has held that "[g]enerally, the court denies motions to vacate if a substantial period of time has elapsed prior to the entry of the motion." *United States v. Collins*, 311 F. App'x 741, 743 (6th Cir. 2008). In that case, the Sixth Circuit noted that the defendant had waited nearly four months before filing his motion to withdraw "far exceeding the time frame that this court has previously held reasonable." *Id*. at 743-44. The Court cited several prior cases holding that delays of 77 days, 67 days, 55 days, and 5 weeks all merited denial of motions to withdraw guilty pleas. *Id*. (collecting cases). Because these time frames have been deemed a substantial delay, meriting denial of a motion to withdraw, the Court concludes that Defendant's six-month delay merits denial of his motion to withdraw.

Second, as to the presence or absence of a valid reason for the delay in filing the instant motion, the Court notes that Defendant testified, at the hearing on this matter, that the delay was a result of his prior counsel refusing to file a motion to withdraw, despite Defendant's repeated e-mails requesting such. The Court, however, struggles to find Defendant's self-serving testimony credible at this juncture. During his testimony, Defendant admitted that, at his change-of-plea hearing, he lied to the Court while under oath. It appears to the Court that Defendant is willing to testify to whatever he believes will support his interests, regardless of the veracity of his statements. Moreover, the

Court notes that, despite Defendant's assertion that he was in possession of many e-mails in which he asked his prior counsel to file a motion to withdraw his guilty plea, Defendant did not present any such e-mails to the Court, or any further evidence supporting his claim that the e-mails existed. On this record, the Court cannot conclude that Defendant has shown a valid reason for the delay in filing the instant motion.

Third, as to whether Defendant has asserted or maintained his innocence, the Court understands that Defendant's position is that, while he did make the threatening phone calls that form the basis for the charge to which he pleaded guilty, he nonetheless believes he has a valid defense, namely, that the victim "acted criminally" against him. However, Defendant has not shown that he made "vigorous and repeated protestations of innocence." *See Alexander*, 948 F.2d at 1004. At the change of plea hearing, Defendant admitted that the factual basis for the plea, which was contained in the plea agreement and read aloud in open court, was correct with "some slight inaccuracies" [doc. 62 at 14]. Specifically, he stated, "I made some threatening calls to someone that had caused me significant emotional distress and I feel have acted criminally against me" [*id*.]. At the hearing on the instant motion, Defendant again admitted that he made the threatening calls, but reiterated, without elaboration, that the victim "acted criminally" against him. Because Defendant does not deny making the statements which support the charged offense, the Court cannot conclude that Defendant has maintained his innocence, such that his behavior supports allowing him to withdraw his plea of guilty at this stage.

Fourth, as to the circumstances underlying the entry of his guilty plea, Defendant now asserts that: (1) he was under pressure from his wife, who had threatened to divorce him if he did not plead guilty; (2) he had no option but to plead guilty in light of his medical conditions; and (3) he was under pressure due to the holiday season. However, during the plea colloquy, Defendant stated that no one had placed any pressure on him to plead guilty [doc. 62 at 8]. Accordingly, Defendant's assertions that he entered his guilty plea under duress are belied by his sworn statements during the plea colloquy. As the Court mentioned earlier, it is difficult to believe Defendant's testimony at this juncture, based on his inconsistent testimony and his admission that he lied under oath at his change-of-plea hearing. Absent any further evidence supporting Defendant's claims that his guilty plea was made under duress, the Court cannot find that this factor supports allowing Defendant to withdraw his guilty plea at this late stage.

As to the fifth and sixth factors, there is no dispute that Defendant had very little prior experience with the criminal justice system. Moreover, as to Defendant's nature and background, the Court notes that the record indicates Defendant has an extensive history of mental illness. However, prior to Defendant entering a guilty plea in this case, a mental evaluation was conducted, upon Defendant's prior counsel's request, and Defendant was found competent to proceed to trial. The only potential factor from Defendant's background that he may be relying on in support of this factor is his physical ailments, which he contends left him bedridden and unable to "fight" the charges at the

time that he pleaded guilty.  This alone is insufficient to show a "fair and just reason" for allowing Defendant to withdraw his guilty plea.

**Conclusion**

In the absence of further evidence, the Court concludes that the *Bashara* factors do not support a finding of a "fair and just reason" to allow Defendant to withdraw his guilty plea.  Accordingly, Defendant's motion to withdraw plea of guilty [doc. 60] is **DENIED**.  The sentencing in this matter will proceed as scheduled, on July 24, 2019, at 2:00 p.m. in Knoxville.

**IT IS SO ORDERED.**

     s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE